# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1157-19T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

A.K.,

     Defendant,

and

E.K.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.K.,
a minor.

_____

Submitted September 30, 2020 – Decided October 26, 2020

Before Judges Gilson and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0033-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Lauren Derasmo, Designated Counsel, on the briefs).

Gurbir Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Viviane Sullivan, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Louise M. Cho, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant E.K. (Ed)[1] appeals from the judgment of guardianship entered after a two-day trial in July 2019, terminating parental rights to his son, A.K. (Alan)—born in September 2016 to his mother, defendant A.K. (April)[2]—and awarding guardianship to the New Jersey Division of Child Protection and

---

[1] We use pseudonyms for the parties and the child to protect their privacy, preserve the confidentiality of the proceedings and for the reader's convenience. R. 1:38-3(d)(12); 1:38-3(e).

[2] April has not appealed from the same judgment terminating her parental rights to Alan.

A-1157-19T3

Permanency (the Division). He argues the Division did not present sufficient evidence to prove each of the four statutory prongs[3] to terminate his constitutionally protected right to the care, custody, and control of his child. Santosky v. Kramer, 455 U.S. 745 (1982); In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999). Under our limited review of a judge's decision to terminate parental rights, N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605

---

[3] To secure parental termination, N.J.S.A. 30:4C-15.1(a) requires the Division to prove by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from [his] resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the [judge] has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

A-1157-19T3

(2007), and according deference to the judge's fact-finding "[b]ecause of the family courts' special jurisdiction and expertise in family matters," N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (alteration in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)), we affirm Judge Michael Antoniewicz's decision substantially for the reasons set forth in his comprehensive fifty-six-page written opinion.

Arguing against the proofs that support the first prong, Ed contends he did not harm Alan. Judge Antoniewicz considered "whether the parent has harmed the child or may harm the child in the foreseeable future," N.J. Div. of Youth & Fam. Servs. v. C.S., 367 N.J. Super. 76, 113 (App Div. 2004), finding Ed, from the time the Division took custody of Alan when he was four-months old, was unable to: address his criminal, substance abuse and mental health issues; provide stable housing; maintain employment; or demonstrate adequate parenting skills. The judge rejected Ed's explanation to his expert in forensic psychology, Dr. Gerard Figurelli, that he visited Alan only once—for one hour in October 2017—because he was focusing on his health and did not want to expose Alan to a risk of harm. Instead, he found Ed did not visit even after successfully completing inpatient and outpatient programs, attempt to clear

warrants issued in New Jersey that would have allowed him to visit, or even personally appear at and participate in the guardianship trial.

And, although the judge credited Dr. Figurelli's testimony recommending against Ed's reunification with Alan because Ed did not then possess adequate parenting skills, he did not find credible the doctor's testimony that Alan would suffer no additional harm if Ed were provided additional time to attain those skills. Instead, Judge Antoniewicz found persuasive the testimony of the Division's expert in forensic psychology, Dr. Barry Katz, who, after conducting a psychological evaluation of Ed, opined that additional time would cause Alan harm, and that Ed "had a poor prognosis for positive change" and would "not be in a position to care for the child in the foreseeable future."

The judge concluded that Ed's "lack of parenting skills . . . and his extended absence as a parental figure . . . has played a role in the harm to" Alan. That "current and future risk of harm," the judge deduced, made Ed "further unavailable to provide his child with any nurturance, care and solicitude. Furthermore, the evidence presented by Dr. Katz supports the finding that the child will continue to be endangered by a parental relationship with [Ed]."

Judge Antoniewicz's well-supported findings met the Division's burden of proving that "the parent has harmed the child or may harm the child in the

foreseeable future."  <u>Ibid.</u>  The Division "does not have to wait 'until a child is actually irreparably impaired by parental inattention or neglect'" to satisfy the first prong.  <u>N.J. Div. of Youth & Fam. Servs. v. F.M.</u>, 211 N.J. 420, 449 (2012) (quoting <u>In re Guardianship of D.M.H.</u>, 161 N.J. 365, 383 (1999)).  "Serious and lasting emotional or psychological harm to children as the result of the action or inaction of their biological parents can constitute injury sufficient to authorize the termination of parental rights."  <u>In re Guardianship of K.L.F.</u>, 129 N.J. 32, 44 (1992).  "A parent's withdrawal of that solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child."  <u>D.M.H.</u>, 161 N.J. at 379. "When the condition or behavior of a parent causes a risk of harm, such as impermanence of the child's home and living conditions, and the parent is unwilling or incapable of obtaining appropriate treatment for that condition, the first subpart of the statute has been proven."  <u>N.J. Div. of Youth & Fam. Servs. v. H.R.</u>, 431 N.J. Super. 212, 223 (App. Div. 2013).

As is often the case, the evidence offered to prove the first prong also served to prove the second prong, <u>N.J. Div. of Youth & Fam. Servs. v. R.L.</u>, 388 N.J. Super. 81, 88 (App. Div. 2006), which requires the Division to "demonstrate that the parent is 'unable to eliminate the harm facing the child or is unable . . .

6

to provide a safe and stable home for the child' . . . before any delay in permanent placement becomes a harm in and of itself," N.J. Div. of Youth & Fam. Servs. v. A.G., 344 N.J. Super. 418, 434 (App. Div. 2002) (first alteration in original) (quoting N.J.S.A. 30:4C-15.1(a)(2)).  The judge properly evaluated the evidence that proved Ed had not cured the initial harm caused by his failures to address his own problems, establish a relationship with Alan and provide for his child. See K.H.O., 161 N.J. at 353 ("[T]he second prong may be met by indications of parental dereliction and irresponsibility, such as the parent's continued or recurrent drug abuse, the inability to provide a stable and protective home, the withholding of parental attention and care . . . with the resultant neglect and lack of nurture for the child.").

The judge further noted Alan had been in a resource home for over two and one-half years, and enjoyed "a warm, loving and nurturing environment." In contrast, Ed had not formed a bond with Alan.  Thus, the judge rightly credited the testimony of Dr. Katz, based on his bonding evaluation of Alan and his maternal aunt, that Alan had "a positive emotional tie to the maternal aunt," and was "flourishing in the care of the [r]esource [p]arent and the . . . aunt"; removing the child from the aunt and resource parent, who were the only reliable caretakers he has known, would significantly harm Alan; and "removing the

child from the care of the maternal aunt who has expressed a firm desire to adopt [Alan] would be extremely distressing, disorganizing and a traumatic loss to the child." Contrasted to the evidence that Ed never formed any bond with Alan, we discern no error in the judge's conclusion that the Division's evidence proved the second prong. See N.J. Div. of Youth & Fam. Servs. v. B.G.S., 291 N.J. Super. 582, 592 (App. Div. 1996) (recognizing "harms attributable to a biological parent include the prolonged inattention to a child's needs, which encourages the development of a stronger, 'bonding relationship' to foster parents, 'the severing of which would cause profound harm'" (quoting In re Guardianship of J.C., 129 N.J. 1, 18 (1992))). As our Supreme Court held in K.H.O., 161 N.J. at 348-49, harm may be "shown [by proof] that the parent is unable to provide a safe and stable home for the child and that the delay in securing permanency continues or adds to the child's harm."

The balance of Ed's arguments regarding proofs related to the third and fourth prongs are without sufficient merit to warrant discussion, Rule 2:11-3(e)(1)(E), and we affirm for the reasons expressed by Judge Antoniewicz. We add only that Ed was as absent from services offered by the Division as he was from Alan's life; the Division fostered the link between Alan and his maternal aunt; and there is no evidence that Ed's girlfriend, N.P.—who was living with

Ed in Connecticut, and called the Division when Ed was unemployed and about to enroll in an inpatient drug program to inquire about caring for Alan with Ed—ever saw or established any bond with Alan. Further, Judge Antoniewicz compared the strength of Alan's relationship with his maternal aunt with the non-existent bond—which did not even warrant a bonding evaluation—he had with Ed, and the relative harm that would befall Alan if he was removed from one or the other and the ability of each to ameliorate that harm. See K.H.O., 161 N.J. at 355. The judge's findings were amply supported by the evidence offered by Dr. Katz, "a 'well qualified expert who has had full opportunity to make a comprehensive, objective, and informed evaluation' of the child's relationship with both [his] natural parent[] and" maternal aunt. N.J. Div. of Youth & Fam. Serv. v. M.M., 189 N.J. 261, 281 (2007) (quoting J.C., 129 N.J. at 19). We see no reason to disturb Judge Antoniewicz's decision that "a child has a right to live in a stable, nurturing environment and to have the psychological security that his most deeply formed attachments will not be shattered." F.M., 211 N.J. at 453.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1157-19T3